UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COURTNEY FUSCELLARO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 11-723 |
| | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| COMBINED INSURANCE GROUP, LTD., PERSONAL SERVICE INSURANCE COMPANY, INC., and AMERICAN INDEPENDENT INSURANCE COMPANY, INC. | : | |
| Defendants. | : | |

This matter comes before the Court on a Motion to Dismiss by Defendants Personal Service Insurance Company and American Independent Insurance Company pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6). Subsequent to Defendants' Motion, Plaintiff voluntarily dismissed this action as to Defendant American Independent Insurance Company, Inc. Therefore, the Court addresses Defendants' Motion as to Personal Service Insurance Company. The Court has reviewed the written submissions of the parties. For the reasons stated below, Defendants' motion will be GRANTED.

## **Background**

This action arises out of an insurance claim that Plaintiff Courtney Fuscellaro filed pursuant to an automobile insurance policy seeking coverage for damages sustained in an automobile accident. Defendants Combined Insurance Group ("CIG") and Personal Service Insurance Company ("PSI") denied Plaintiff's claim alleging lack of coverage. Based on Defendants' denial of coverage, Plaintiff filed this Complaint alleging

breach of contract, fraud, and bad faith. The facts as stated in Plaintiff's Amended Complaint are as follows.

On or about November 22, 2010, Plaintiff purchased a 2006 BMW automobile from Best Buy Motors, Inc. by way of a retail installment contract and security agreement. (Am. Compl. at ¶ 7.) Best Buy Motors transferred the agreement to Westlake Financial Services, which required proof of insurance with comprehensive coverage. (Id. at ¶ 9.) Plaintiff then sought to update her existing insurance policy with Defendant CIG to include her new vehicle. (Id. at ¶ 10.) CIG agreed to provide Plaintiff with coverage, including full comprehensive and collision insurance, and, through Defendant PSI, provided a declaration page confirming collision and comprehensive coverage effective as of November 23, 2010. (Id. at ¶¶ 13, 14.) Relying on the coverage produced by CIG, Plaintiff took delivery of the automobile. (Id. at ¶ 15.)

Shortly thereafter, on December 9, 2010, Plaintiff's BMW was involved in a collision and sustained serious damage. (Id. at ¶ 18.) The following day, Plaintiff reported the accident to PSI and American Independent Insurance Company ("AIIC"). (Am. Compl. at ¶ 19.) After reporting the accident, Plaintiff received numerous declaration pages and letters, including some documents that were dated prior to the date of the accident but post-marked after that date. (Id. at ¶ 20.) In a letter from a PSI claims adjuster dated December 14, 2010, PSI informed Plaintiff that Plaintiff's BMW did not have "collision/comprehensive" coverage and that AIIC would not pay the claim. (Am. Compl. at ¶23; Ex. "D.") On December 16, 2010, the adjuster called and told Plaintiff that there was never collision or comprehensive coverage on the vehicle. (Am. Compl. at ¶25.) Plaintiff believed this to be a mistake, given that the information on the declaration page indicated that she had coverage, and the adjuster advised Plaintiff to

contact CIG. (Id. at ¶26.)

When Plaintiff contacted CIG, CIG informed her that the collision and comprehensive coverage had been canceled because Plaintiff had not taken the car in for a required photo inspection. (Id. at ¶ 27.) Plaintiff contended that at no time had anyone from CIG informed her of the photo inspection requirement, to which CIG's agent responded, "too bad have your lawyer call us." (Id. at ¶ 28.) Plaintiff then received several letters from CIG. Plaintiff received two identical letters from an agent of CIG dated December 15, 2010, in which the agent stated that he had been attempting to call Plaintiff to remind her that her comprehensive/collision coverage had been cancelled due to Plaintiff's failure have the photo inspection completed. (Am. Compl. at ¶ 29; Ex. "E.") On or about December 15, 2010, Plaintiff also received another letter from CIG that was identical to the December 15th letters, but dated November 16, 2010,[1] which was prior to the date on which Plaintiff purchased the vehicle. (Am. Compl. at ¶ 30; Ex. "F.") Prior to the date of the accident, however, the only correspondence Plaintiff received from the Defendants in any form was PSI's delivery of insurance identification cards representing the policy number listed on the declaration pages which PSI initially provided to Plaintiff. (Am. Compl. at ¶¶ 16, 17.)

Plaintiff also subsequently received correspondence from AIIC and PSI in the form of three declaration pages sent between December 16 and December 23, 2010. (Id. at ¶ 31.) Two of the three declaration pages, with effective dates of December 1, 2010, and December 7, 2010, respectively, indicate no comprehensive or collision coverage. (Am. Compl. ¶¶ 32, 33; Ex.'s "G," "H.") The third declaration page, also indicating an

---

[1] The date in the letter is printed as "11/16/2010." (Ex. "F.")

effective date of December 7, 2010, indicates both comprehensive and collision coverage. (Am. Compl. ¶34; Ex. "I.")

Plaintiff filed an Amended Complaint in this matter on March 1, 2011, alleging breach of contract (Count I), common law fraud (Count II), bad faith (Count III), and consumer fraud (Count IV) against all Defendants. The Amended Complaint seeks specific performance under the insurance policy and injunctive relief, as well as actual and punitive damages. On March 31, 2011, Defendants PSI and AIIC filed the present motion to dismiss for lack of jurisdiction as to AIIC pursuant to 12(b)(2) and failure to state a claim pursuant to 12(b)(6) as to both Defendants. Plaintiff dismissed this action as to AIIC on April 19, 2011, and filed a reply to Defendants' motion on April 25, 2011. As such, AIIC's motion will be dismissed as moot. Remaining at issue is Defendants' motion to dismiss Counts II, III, and IV of the Amended Complaint as to PSI pursuant to 12(b)(6). To date, CIG has not made an appearance in this matter. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## Discussion

### I. Standard of Review Under Rule 12(b)(6)

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[2] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808,

---

[2] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation

812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 129 S.

---

marks and citations omitted) (emphasis deleted).

[3]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

Ct. at 1950 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted).  See also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**II. Analysis**

Defendants argue that the Amended Complaint fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b), and that Plaintiff fails to state claims for bad faith and consumer fraud under New Jersey law. Defendants also argue that Plaintiff fails to plead a cause of action for punitive damages. The Court addresses each argument in turn.

A. Plaintiff's Common Law Fraud Claim

In order to state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its

falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367-368 (N.J. 1997). Misrepresentation and reliance are the hallmarks of any fraud claim. Banco Popular North America v. Gandi, 876 A.2d 253, 261 (N.J. 2005). Without reasonable reliance on a material misrepresentation, an action in fraud must fail. Triffin v. Automatic Data Processing, Inc., 926 A.2d 362, 369 (N.J. Super. Ct. App. Div. 2007).

  A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The facts alleged must "place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico, 507 F.3d at 200 (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)). A plaintiff can satisfy the requirements of Rule 9(b) by "pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum, 361 F.3d at 224 (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). A plaintiff must also "allege who made a representation to whom and the general content of the misrepresentation." Id.

  In the instant case, Plaintiff fails to plead fraud with facts sufficient to meet the particularity requirements of Rule 9(b). In Count II of Plaintiff's Amended Complaint, Plaintiff states a conclusory allegation that the actions of "the Defendant" described in the complaint constitute fraud and then proceeds to list the elements of fraud. (Am. Compl. at ¶ 41.) No where in the Amended Complaint does Plaintiff allege that PSI made a false representation, when such representation may have been made, the content of

any such representation, or any other facts that would place PSI on notice of the "precise misconduct with which [it is] charged." Lum, 361 F.3d at 224.

In addition to the deficiencies of Plaintiff's pleadings under Rule 9(b), the Amended Complaint's allegations against PSI are not sufficient to make out a prima facie case of fraud under New Jersey law and fail to satisfy the standards of Rule 12(b)(6). Plaintiff alleges, with respect to PSI, only that: (1) PSI sent her a letter stating that she had no collision or comprehensive coverage on her vehicle; (2) PSI called Plaintiff and told her there was "never" collision and comprehensive on the vehicle; and (3) Plaintiff received three different declaration pages from AIIC and PSI in the days following the accident with varying dates and indications of coverage. When PSI told Plaintiff that she "never" had collision and comprehensive coverage, Plaintiff explained that "it must be a mistake," and PSI advised Plaintiff to contact CIG. (Compl. at ¶ 26.) Plaintiff does not allege that PSI knowingly made any false representations and, notably, does not allege that she relied on any such representations. In short, "the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility" of fraud on the part of PSI. Iqbal, 129 S. Ct. at 1950. For these reasons, Count II of Plaintiff's Amended Complaint will be dismissed as to PSI.

### B. Plaintiff's Bad Faith Claim

The New Jersey Supreme Court recognized a cause of action and established the governing standard for an insurance company's bad faith refusal to pay a claim in Pickett v. Lloyd's, 621 A.2d 445 (N.J.1993). Under the Pickett standard, a plaintiff must satisfy two elements in order to state a claim for bad faith in the insurance benefits context. The plaintiff must show that (1) the insurer lacked a "fairly debatable" reason

for its refusal to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. Id. at 454. In order to meet the "fairly debatable" standard, a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so would not be entitled to assert a claim for bad faith. Id. In other words, if there are material issues of disputed fact as to the underlying benefits claim, an insured cannot maintain a cause of action for bad faith. Id.; Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 400-01 (D.N.J. 2000); Polizzi Meats v. Aetna Life & Cas. Co., 931 F. Supp. 328, 335 (D.N.J. 1996).

    Plaintiff's Amended Complaint neither shows nor adequately alleges that PSI lacked a fairly debatable reason for refusing payment on Plaintiff's claim. Plaintiff alleges that PSI's adjuster informed Plaintiff that AIIC would not make payment because Plaintiff's vehicle did not have collision/comprehensive coverage. (Am. Compl. at ¶ 23.) PSI referred Plaintiff to CIG, which informed Plaintiff that full comprehensive and collision coverage had been cancelled because Plaintiff had not obtained the required photo inspection of the vehicle. Plaintiff does not allege that the photo inspection was not in fact required; rather, Plaintiff avers that CIG did not inform her of the requirement prior to the accident.[4]

    At base, Plaintiff alleges a contract dispute as to whether or not collision and comprehensive coverage remained a part of her policy given CIG's failure to inform her of the inspection required to maintain coverage. PSI's reason for refusing to pay–lack of

---

[4] Defendant points to provisions of New Jersey law which require vehicle inspections in connection with the issuance of insurance policies providing coverage for physical damage, including provisions for the suspension of coverage if such inspections are not made. (Def.'s Br. at 15; N.J.S.A. 17:33B-33 et seq; N.J.A.C. 11:3-36.1 et seq.).

coverage, as alleged in the Amended Complaint–presents disputed issues of material fact as to Plaintiff's underlying claim. When Plaintiff disputed PSI's assertion that she did not have full coverage, PSI advised Plaintiff to consult CIG. Plaintiff has therefore failed to show that PSI either lacked a fairly debatable reason for denying Plaintiff's claim, or that PSI knowingly or recklessly disregarded the lack of a reasonable basis for denying the claim. Picket, 621 A.2d at 454. Plaintiff's assertion in ¶ 45 of the Amended Complaint that "[t]he denial and withholding of benefits for the reasons set forth above are not even debatably valid" is no more than a legal conclusion made in the guise of a factual allegation, and cannot support a claim for relief for bad faith. Accordingly, Count III of the Amended Complaint will be dismissed as to PSI.

    C.  Plaintiff's Claim Under the New Jersey Consumer Fraud Act

New Jersey courts have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2. Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998); See Kuhnel v. CNA Ins. Companies, 731 A.2d 564, 572 (N.J. Super. Ct. App. Div. 1999) certif. denied, 746 A.2d 458, cert. denied, 531 U.S. 819 (2000); Pierzga v. Ohio Cas. Group of Ins. Companies, 504 A.2d 1200, 1204 (N.J. Super. App. Div. 1986). A claim for failure to pay benefits is a claim for breach of contract, and the breach of an enforceable contract does not constitute a violation of the CFA. Daloisio v. Liberty Mut. Fire Ins. Co., 754 F. Supp. 2d 707, 710 (D.N.J. 2010) (citing Richardson v. Standard Guar. Ins. Co., 853 A.2d 955, 968 (N.J. Super. Ct. App. Div. 2004)). "The mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice." Van Holt, 163 F.3d at 168.

Plaintiff's claims arise out of Defendants denial of insurance benefits and amount to allegations of breach of contract. As such, Plaintiff's claim against PSI is not covered by the CFA and is accordingly dismissed.

### D.  Plaintiff's Demand for Punitive Damages

In New Jersey, breaches of contract do not give rise to punitive damages unless the defendant also violates a separate and independent duty beyond the contract. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1194 (3d Cir. 1993). See also, Sandler v. Lawn-A-Mat Chemical & Equipment Corp., 358 A.2d 805, 812 (N.J. Super. App. Div. 1976) ("Where the essence of a cause of action is limited to a breach of such a contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach"); Pickett v. Lloyd's, 621 A.2d at 455 ("absent egregious circumstances, no right to recover for . . . punitive damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim").

Due to the dismissal of Plaintiff's claims for fraud and bad faith, the only remaining claim against PSI is for breach of contract. Accordingly, Plaintiff is not entitled to punitive damages.

## **Conclusion**

For the reasons stated above, AIIC's motion will be dismissed as moot, and PSI's motion will be granted as to Counts II, III, and IV. The appropriate orders shall issue.

Dated: September 29, 2011

                                              ___/s/ Joseph H. Rodriguez_____
                                              Hon. Joseph H. Rodriguez,
                                              United States District Judge